## TALLULAH PLUMBING & SHEET METAL WORKS v. TALLULAH HOUSING CORPORATION.*

### No. 4275.

Court of Appeal of Louisiana. Second Circuit.

May 20, 1932.

Snyder & Sevier, of Tallulah, for appellant.

Geo. Wesley Smith, of Rayville, for appellee.

### McGREGOR, J.

In this suit the plaintiff is demanding the sum of $831.75 for labor and material performed and furnished in connecting ten of defendant's houses with the water and sewerage system in the town of Tallulah. The suit is based on a quantum meruit, and is brought nearly twelve months after the completion of the work, and it is alleged that nothing had been paid thereon.

In its answer the defendant denies that it owes the plaintiff any sum whatever. It admits that the plaintiff did the work described in the petition, but alleges that it was done for a specified contract price of $474.50, plus certain extras for repairs made, and that this sum had been paid in full.

On the trial of the case judgment was rendered in favor of the plaintiff for the sum of $831.75, less a credit of $533.15, shown to have been received by the plaintiff on the work. From that judgment the defendant has appealed.

#### Opinion.

The only issue involved in this case is as to whether the work was done by the plaintiff for the defendant for a stipulated contract price, or whether the defendant employed the plaintiff to do the work without any price being fixed and agreed to pay whatever the plaintiff should charge within the bounds of reason. In the determination of this question it is necessary to accept or reject, absolutely, the testimony of one side or the other.

It is admitted that on November 15, 1929, the plaintiff made a written proposition to the defendant to do the work in question for the sum of $474.50. At the bottom of this written proposition there is a blank line for ·the signature of the defendant in case the proposition should be accepted. The document was signed by the plaintiff and delivered to an agent of the defendant, but was not signed by any one for the defendant. It was left with one W. Z. Adams, an employee of the Tallulah State Bank & Trust Company, and agent of the defendant. Adams has no interest in the defendant company, but was acting as its agent as a matter of accommodation to W. S. Craig, the secretary-treasurer, who was sick at the time.

*Rehearing denied June 15, 1932.

In order to better understand the case it is well to note that the plaintiff is a commercial partnership composed of A. H. Harrop, Sr., and A. H. Harrop, Jr., father and son, and that the defendant is a corporation composed of several of the leading citizens of Tallulah.

It is the testimony of Adams that when A. H. Harrop, Sr., presented the written proposition to him it was agreed verbally that it was accepted and that the work would proceed at once. It is a fact that some work was actually done in the month of December, but the plaintiff denies that it was done under the contract, and alleges that it was done for his convenience as he was living in one of the houses with his son, A. H. Harrop, Jr., and that no charge was rendered for the same. Harrop testifies further that the written proposition was never accepted and that nothing was done until January 29, 1930, when he and Adams had a verbal agreement that he and his son would do the work at once— not under the terms of the written proposition, but *as cheap as he could do it*. It is his testimony that the town of Tallulah had changed inspectors since the submission of the written proposition and that it would cost more to do the work in such a way as to meet the approval of this new inspector. Adams denies this statement absolutely and testifies positively that the work began in December of 1929. He verifies this by the fact that some of the water pipes already in the house bursted in that month, and that when he went to see about having these pipes repaired, he urged the plaintiff to go ahead with the work provided for in the contract. The plaintiff's reply was that the repair of these bursted pipes could not be included in the contract price, and that therefore the total job would be more than the $474.50 named in the written proposition. Adams says that he then told plaintiff to go ahead and make the repairs and to render a bill for them extra or over and above the original contract price. Harrop says that it was on January 29th that this agreement was made to include the fixing of the bursted pipes in the job and to charge extra for that work. It is a matter of common knowledge that this freeze was in December of 1929, and not in the latter part of January, 1930, and this fact corroborates Adams in his testimony.

In his petition Harrop says that nothing was paid at all by the defendant on the work, and in his testimony he contended the same thing. And yet, it was conclusively proved that he had received the sum of $474.50, plus $58.65, the cost of repairing the bursted pipes. It is in evidence that he disbursed this $533.15 by checks on his bank account, and yet he professes ignorance as to whether he received the money. On one of the statements rendered by him to the defendant he gave credit for this same sum.

 Harrop is corroborated in his testimony by his son and another plumber whom he employed to assist him, so that we have the testimony of Adams for the defendant, and the two partners and a hired helper for the plaintiff. As stated above, we must absolutely accept or reject the testimony of one side or the other. The trial judge saw and heard the witnesses and decided in favor of the plaintiff. Ordinarily in such a case we do not disturb the finding of the trial judge, but each case must stand or fall on its own merits. In determining the weight of testimony, the fact that more witnesses testify for a plaintiff or a defendant will by no means govern the decision.

In this case there is only one witness for the defendant. He holds a responsible position with the bank and is a disinterested party. His testimony is straightforward and frank and is corroborated by every available circumstance. The three witnesses for the plaintiff are all interested parties. Furthermore, the plaintiff has been unsatisfactory in its testimony. In his petition Harrop swore that nothing had been paid by the defendant. He maintains that position in his testimony. When confronted with the fact that his bank account had a credit of $533.15, he stated that he did not know the source from which it came. It is inconceivable, during these days of depression, that a man with a small business should receive and disburse that large amount of money and not know where it came from. The conclusion is irresistible that the plaintiff's witnesses have not been frank with the court. This circumstance, taken in connection with the Harrops' interest in the case, convinces us that Adams was telling the truth when he says he instructed the plaintiff to proceed with the work at the price named in the written proposition.

 The fact that the defendant requested in advance and received a separate statement for the work that was caused by the freeze, and that was outside of what the contract called for, is a strong corroborating circumstance in favor of the defendant's position. Weighing all the testimony, considering the manner in which it was given, the interest of the parties testifying for the plaintiff and the lack of interest of the defendant's one witness, we think that the judgment of the lower court is wrong and should be reversed.

For the reasons assigned, the judgment appealed from is avoided, annulled, and set aside, and judgment is hereby rendered in favor of the defendant rejecting the demands of the plaintiff and dismissing its suit at its cost in both courts.